# UNITED STATES DISTRICT COURT

for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.
)
Telcel 4G LTE SIM Card )
Serial Number: 8952020217411056823 )



**18MJ1840**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952/960 | Importation of a Controlled Substance |
| 21 USC 963 | Conspiracy to Import a Controlled Substance |
| 21 USC 841 | Possession of a Controlled Substance with Intent to Distribute |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Earl Jordan HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/17/2018

*Judge's signature*

City and state: San Diego, CA                    Honorable Andrew G. Schopler
*Printed name and title*
**ANDREW G. SCHOPLER**
**U.S. MAGISTRATE JUDGE**

## **ATTACHMENT A-3**

## PROPERTY TO BE SEARCHED

A Telcel 4G LTE Subscriber Identity Module (SIM) Card; Serial# 8952020217411056823; currently in the possession of United States Customs and Border Protection, 9495 Custom House Plaza, San Diego, CA 92154 (Seized Property Vault).

## **ATTACHMENT B-3**

### ITEMS TO BE SEIZED

Authorization to search the **Target SIM Card** described in Attachment A-3 includes the search of deleted data, remnant data, slack space, and temporary or permanent files contained on **Target SIM Card**. The seizure and search of the **Target SIM Card** will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target SIM Card** will be electronic records, communications, and data such as user identity, location data, phone number, network authorization data, personal security keys, contact lists, and stored text messages, for the period of August 18, 2017 to December 18, 2017:

a. tending to identify attempts to import heroin, methamphetamine or some other federally controlled substance from Mexico into the United States, or to possess and/or transport with the intent to distribute heroin, methamphetamine or some other federally controlled substance within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services--such as email addresses, IP addresses, and phone numbers--used to facilitate the importation of heroin, methamphetamine, or some other federally controlled substance from Mexico into the United States or the possession and/or transportation with the intent to distribute federally controlled substances within the United States;

c. tending to identify payment, payment methods, trips to pick up money in the United States for delivery in Mexico, or other monetary transactions relating to importing federally controlled substances from Mexico to the United States or the possession and/or transportation with the intent to distribute federally controlled substances within the United States;

d. tending to identify co-conspirators, criminal associates, or others involved in the importation of heroin, methamphetamine or some other federally controlled substance from Mexico into the United States or the possession and/or transportation with the intent to distribute of federally controlled substances within the United States;

e. relating to the purchase or registration of vehicles to import federally controlled substances from Mexico into the United States;

f. tending to identify travel to or presence at locations involved in the importation of heroin, methamphetamine or some other federally controlled substance from Mexico into the United States, or the possession and/or transportation with the intent to distribute federally controlled substances within the United States, such as stash houses, load houses, or delivery points;

g. tending to identify the user of, or persons with control over or access to, the **Target SIM Card**; and/or

h. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Section 841, 846, 952, 960, and 963.**

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Earl Jordan, being duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in the following electronic devices (collectively the **Target Devices**):

    a. ALCATEL Model 1050A Cellular Telephone
       IMEI: 014453006338995
       (**Target Device 1**);

    b. SENWA Model: S471 Cellular Telephone Phone
       IMEI: 352436080940133
       (**Target Device 2**);

as more fully described in Attachments A-1 and A-2; and

    c. Telcel 4G LTE Subscriber Identity Module (SIM) Card
       Serial Number: 8952020217411056823
       (**Target SIM Card**)

as more fully described in Attachment A-3.

2. The **Target Devices** and **Target SIM Card** were seized on December 18, 2017 from Shannon Marie HAWKINS ("HAWKINS"), at the Tecate Port of Entry, Tecate, California when she entered the United States from Mexico driving a 2003 Nissan Altima concealing approximately 21.76 kilograms of methamphetamine and 3.24 kilograms of heroin. The **Target Devices** and **Target SIM Card** are currently in the possession of the Department of Homeland Security. HAWKINS has been charged with two counts of importation of a controlled substance in violation of Title 21, United States Code sections 952 and 960 in the Southern District of California in case number 18-CR-288-AJB.

3. I seek a warrant to search the **Target Devices** and **Target SIM Card** for evidence relating to violations of Title 21, United States Code Sections 841 (Possession of a Controlled Substance with Intent to Distribute); 846 (Conspiracy to Distribute Controlled Substances); 952 and 960 (Importation of a Controlled Substance) and 963 (Conspiracy to

Import a Controlled Substance), for the period of August 18, 2017 to December 18, 2017, as more fully described in Attachments B-1 to B-3.

## TRAINING AND EXPERIENCE

4. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI") and have been so employed since January 2016. I am a graduate of the Criminal Investigator Course and Immigration and Customs Enforcement, Special Agent Training Program at the Federal Law Enforcement Training Center. I have a Bachelor's degree in Homeland Security and Emergency Management and a Master's in Public Administration from National University. Prior to my employment with HSI, I was employed as a police officer with the Department of Homeland Security, from May 2009 to October 2015. Prior to that I was in the United States Marine Corps. I am presently assigned to a contraband smuggling group in San Diego, CA, and my current duties include investigating the illicit trafficking of controlled substances into the United States. I am also cross-designated by the United States Drug Enforcement Administration ("DEA") to conduct narcotics investigations and enforce the provisions of the Federal Controlled Substances Act. I have received training in the methods used by controlled substance traffickers to import and distribute drugs and to operate detailed distribution networks.

5. Since becoming an HSI Special Agent, I have been involved in over 20 narcotics trafficking investigations involving the importation, distribution and sale of large quantities of controlled substances. I have also worked with and conferred with other agents with extensive experience in narcotics smuggling investigations. In the course of my duties, I have worked as the case agent, responsible for directing specific drug-related investigations. I have also conducted surveillance, observing and recording movements of individuals trafficking in drugs and of those suspected of trafficking in drugs; participated in the execution of search warrants; participated in international and domestic controlled deliveries of narcotics, executed numerous arrests for drug-related offenses; and

interviewed defendants and witnesses relating to the illegal trafficking of controlled substances. Over the course of my employment as an HSI Special Agent, I have gained a working knowledge and insight into the operations of narcotics smugglers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego international ports of entry.

6. The facts and opinions set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews; my review of documents related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; conversations with other agents experienced in controlled substance investigations, and information gained through my training and experience. All the dates, times, and amounts listed in this affidavit are approximate. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## FACTS SUPPORTING PROBABLE CAUSE

7. On December 18, 2017, at approximately 11:18 a.m., HAWKINS applied for admission into the United States at the Tecate Port of Entry in Tecate, California. At the time, HAWKINS was the driver and sole occupant of a 2003 Nissan Altima bearing California license plate 5GJM759. Customs and Border Protection ("CBP") Officer Rodriguez, who was working primary inspection, encountered HAWKINS and asked her for identification. HAWKINS claimed she had none. In response to questioning, HAWKINS claimed she was going to the DMV in San Diego. CBP Officer Rodriguez received a computer generated referral and referred HAWKINS and the vehicle to secondary inspection.

8. While the vehicle was in the secondary inspection lot, CBP Officer Drivdahl screened HAWKINS' vehicle using his assigned canine Dio. Dio alerted to the underside of HAWKINS' vehicle. During secondary inspection CBP Officer Romero determined that the vehicle's gas tank tapped solid. Further inspection of the gas tank revealed visible packages inside the tank. Upon removing the gas tank, CBP Officers discovered 22 packages that field tested positive for methamphetamine and two packages that field tested positive for heroin. The 22 packages of methamphetamine weighed approximately 21.76 kilograms (47.97 pounds). The two packages of heroin weighed approximately 3.24 kilograms (7.13 pounds).

9. Officers placed HAWKINS under arrest for violating Title 21 United States Code, Sections 952 and 960, Unlawful Importation of a Controlled Substance. At the time of her arrest, HAWKINS was in possession of the **Target Devices** and **Target SIM Card**.[1] Officers seized the **Target Devices** and **Target SIM Card** incident to HAWKINS' arrest.[2] Following her arrest, HAWKINS was read her Miranda rights, waived those rights, and agreed to speak with agents. Although HAWKINS denied knowledge of drugs in her vehicle, she told agents she worked as the personal assistant for a woman named "Angelica Ramirez," and another boss named "Moy." HAWKINS told agents that she knew that Angelica and Moy transport drugs and weapons into the United States. HAWKINS stated that she had done approximately five errands in the U.S. for Angelica and Moy, including

---

[1] The Target SIM Card was wrapped in a piece of paper with the number 665 391 3142 written on it.

[2] Although agents attempted to download information from **Target Devices** and **Target SIM Card** at the Tecate Port of Entry incident to HAWKINS arrest and pursuant to border search authority, I do not rely on any information derived from the search for purposes of determining whether probable cause exists to believe that HAWKINS used the **Target Devices** and **Target SIM Card** to facilitate the offenses of importing controlled substances or that evidence and instrumentalities of illegal activity committed by HAWKINS continue to exist on the **Target Devices** and **Target SIM Card**.

1. strategically staging cars for smuggling. She claimed that on December 8, 2017, she went to San Fernando, CA to pick up $1,800 for Angelica and Moy and claimed that on the date of the instant offense she was going to Los Angeles for Moy to pick up $1,800 to bring back to Mexico. HAWKINS told agents that approximately three to four months before her arrest, Angelica and Moy proposed that she smuggle crystal meth into the United States, and they offered her $500 per pound to do so. She further stated that about a month prior to her arrest, Angelica asked her to deliver a half pound of heroin to a girl named "Blanca" in El Cajon in exchange for a Ford Escape that HAWKINS would bring back to Mexico. HAWKINS claimed that she declined both offers.

10. HAWKINS stated that Moy purchased the 2003 Nissan Altima for her to use and for her to do errands for the bosses. She stated that the car stayed at Moy's house when she was not using it. She later clarified that the car belongs to her, and was purchased specifically for her to use.

11. HAWKINS stated that on the date of her arrest she left her home in Tecate at approximately 10:15 a.m. to meet Moy who was in the 2003 Nissan Altima holding her place in the vehicle lanes on the Mexico side of the border. Upon HAWKINS' arrival, Moy left the vehicle and HAWKINS drove the vehicle into the U.S. HAWKINS admitted that the vehicle smelled like gasoline. During her interview, HAWKINS claimed that Angelica gave her one of the phones in her possession and that Angelica was going to text her the address where she was supposed to pick up money on that phone. HAWKINS further stated that she was supposed to call Angelica upon arriving at the address. She claimed the other phone belonged to her boyfriend, Hernan Tovar.

12. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in controlled substance smuggling investigations, I have learned the following:

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

5

a. It is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities;

b. Conspiracies involving narcotics smuggling generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names and contact information for co-conspirators, photographs, text messages, emails, messages from messaging applications such as WhatsApp, social networking messages, I.P. address information, geo-location information, and videos reflecting co-conspirators or illegal activity;

c. Drug smugglers use cellular telephones because the smugglers are mobile and they have instant access to telephone calls, text, WhatsApp and other messaging applications, the internet, video, social networking sites and applications, and voice messages;

d. Drug smugglers use WhatsApp and other encrypted messaging applications on cellular telephones to communicate because they believe that these services protect their communications from law enforcement;

e. Drug traffickers use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

f. Drug smugglers and their accomplices use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

g. Drug smugglers use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

h. Drug smugglers use cellular telephones to notify or warn their accomplices of law enforcement activity including the presence and location of marked and unmarked police vehicles, as well as the operational status of law enforcement checkpoints;

AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

6

i. Drug smugglers use cellular telephones to communicate with each other regarding payment and other financial arrangements relating to the transportation of their illegal cargo.

13. I have further learned that SIM Cards also known as subscriber identity modules are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location data, phone number, network authorization data, personal security keys, contact lists, and stored text messages. Based on my training and experience as well as my conversations with other agents experienced in drug trafficking investigations, I know that drug smugglers can use a SIM card to allow them to change handsets, but maintain their list of contacts, as well as to permit them to use the same handset with two separate phone numbers, to potentially separate personal phone use from drug trafficking use. I further know that much of the evidence generated by a drug smuggler's use of a cellular telephone would likely be stored on any SIM Card that had been utilized in connection with that telephone.

14. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, I know based upon my training, education, and experience investigating narcotics traffickers that searches of cellular telephones and SIM cards seized from persons involved in such offenses can yield evidence:

AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

7

a. tending to identify attempts to import heroin, methamphetamine or some other federally controlled substance from Mexico into the United States, or to possess and/or transport with the intent to distribute heroin, methamphetamine or some other federally controlled substance within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the importation of heroin, methamphetamine, or some other federally controlled substance from Mexico into the United States or the possession and/or transportation with the intent to distribute federally controlled substances within the United States;

c. tending to identify payment, payment methods, trips to pick up money in the United States for delivery in Mexico, or other monetary transactions relating to importing federally controlled substances from Mexico to the United States or the possession and/or transportation with the intent to distribute federally controlled substances within the United States;

d. tending to identify co-conspirators, criminal associates, or others involved in the importation of heroin, methamphetamine or some other federally controlled substance from Mexico into the United States or the possession and/or transportation with the intent to distribute of federally controlled substances within the United States;

e. relating to the purchase or registration of vehicles to import federally controlled substances from Mexico into the United States;

f. tending to identify travel to or presence at locations involved in the importation of heroin, methamphetamine or some other federally controlled substance from Mexico into the United States, or the possession and/or transportation with the intent to distribute federally controlled substances within the United States, such as stash houses, load houses, or delivery points;

g. tending to identify the user of, or persons with control over or access to, the cellular telephones or SIM cards; and/or

h. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Section 841, 846, 952, 960, and 963.

15. Based upon my training and experience, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that HAWKINS, as well as other persons as yet unknown, were involved in an ongoing conspiracy to import heroin, methamphetamine or some other prohibited narcotics. Based on my experience investigating narcotics smugglers, I also believe that HAWKINS used the **Target Devices** and **Target SIM Card** to coordinate with co-conspirators regarding the importation and delivery of the controlled substances, and to otherwise further this conspiracy both inside and outside the United States.

16. Accordingly, there is probable cause to believe that information relevant to the narcotics smuggling activities of HAWKINS and her co-conspirators, are stored in the memory of the **Target Devices** and **Target SIM Card**. Because the **Target Devices** and **Target SIM Card** have been in the custody of CBP since the date of HAWKINS arrest, I believe that this information continues to be stored on the **Target Devices** and **Target SIM Card**.

## Procedures For Electronically Stored Information

17. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as

personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, I will collect the **Target Devices** and **Target SIM Card** and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## CONCLUSION

20. For the reasons set forth above, there is probable cause to believe that evidence of violations of Title 21, United States Code Sections 841 (Possession of a Controlled Substance with Intent to Distribute); 846 (Conspiracy to Distribute Controlled Substances); 952 and 960 (Importation of a Controlled Substance) and 963 (Conspiracy to Import a Controlled Substance), for the period of August 18, 2017 to December 18, 2017, described in Attachment B-1 to B-3, are likely to be found in the property to be searched described in Attachment A-1 to A-3. Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with Homeland Security Investigations, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachments A-1 to A-3, and seize the items listed in Attachments B-1 to B-3.

EARL JORDAN
HSI Special Agent

Subscribed and sworn to before me this 17th day of April, 2018.

HON. ANDREW G. SCHOPLER
United States Magistrate Judge

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

11